## CHOUTEAU v. UNITED STATES.

A., having a claim against the government under his contract with the Navy Department for building the iron-clad steam-battery "Etlah," executed to B. a power of attorney authorizing him to sue for, recover, and receive all such sum or sums of money, debts, goods, wares, and other demands whatsoever, and especially payments that were or would be due on his contract for building the "Etlah," with full power in and about the premises; to have, use, and take all lawful means and ways in his name for the purposes aforesaid; and to make acquittances or other sufficient discharges for him and in his name, and generally to do all other acts necessary and lawful to be done in and about the premises. The contract fixed the amount to be paid for the battery, and provided for its completion and delivery within eight months from June 24, 1863. For every month that the delivery might be made earlier than the time fixed, the contractor should receive $4,500, and for every month later he should pay a like sum. It also provided that the department might, at any time during the progress of the work, make such alterations and additions to the plans and specifications as it might deem necessary and proper, the extra expense caused thereby to be paid at fair and reasonable rates, to be determined when the changes were directed to be made. The battery was finished for delivery in November, 1865, and the proper authorities of the department certified that the extra work and materials, rendered necessary in making the alterations and additions that were ordered, amounted to $116,111. A portion of that sum having previously been paid, a voucher, in favor of A., for $26,653.17, " being the full and final payment on all extras, and in full for all claims and demands for that work," was approved by the department April 24, 1866, and paid May 11 following to B., who, under his power of attorney, receipted it in full. A.'s assignee, asserting that the extra work amounted to $172,273.55, brought suit in the Court of Claims to recover the excess over the amount paid, and $118,283.30 alleged to be due, irrespective of extras, on account of an increase in the price of labor and materials during the time that the completion of the vessel was delayed by reason of such alterations and additions. *Held*, 1. That the power of attorney authorized B. to accept payment of the voucher, which upon its face declared it was the last and full payment for the extra work, and that his acceptance bound A., and barred a recovery for such work. 2. That the United States is not liable to A. for the increased cost of the labor and materials.

APPEAL from the Court of Claims.

On the ninth day of July, 1863, Charles W. McCord entered into a written contract for building at St. Louis an iron-clad steam-battery, which was built and delivered, and was called the "Etlah." Complete specifications for its construction were part of the contract; and the United States agreed to pay for the battery the sum of $386,000. The contract also provided that the Navy Department might make alterations and additions to the plans and specifications at any time during the

progress of the work, as it might deem necessary and proper, and should pay any extra expense caused by such changes, at fair and reasonable rates, to be determined when the changes were directed to be made. It was also agreed that the battery should be completed and delivered within eight months from the 24th of June, 1863, and that for every month that the delivery might be made earlier than that time McCord should receive $4,500, and for every month later he should pay a like sum.

The vessel was not finished ready for delivery until November, 1865, more than twenty months after the date fixed by the contract; but the Court of Claims found that her completion within the stipulated time was prevented by the United States, and that the cost of the work required by the contract was, owing to the increased price of materials and skilled labor, enhanced $118,283.20 above the sum originally specified. Many and important changes were made in the plan and specifications for the battery by the bureau of construction and repair of the Navy Department; but no agreement as to the additional cost of the work was made, as the contract provided for, except in some matters not now in controversy.

This extra work the petition alleges was of the value of $172,273.55; and the Court of Claims so found. $116,111 was paid for it; and in this action the recovery of the difference of $56,162.55 is sought. Under the finding, the only defence to this branch of the case is that the sum paid was received and accepted as payment in full, as appears by the following voucher, certified by the auditor of the treasury for the Navy Department: —

"Etlah. — Payment on Account of Extras.

"New York, April 24, 1866.

"U. S. Navy Department to Charles W. McCord, Dr.

"(Appropriation: 'Construction and Repair.')
For work done to the light-draft monitor 'Etlah,' which is extra to the contract dated June 24, 1863, being the full and final payment on all extras, and in full for all claims and demands for that work . . . . . . . . . . . . . . . $31,114.00.

Less amount paid E. W. Barstow & Son, as per
order . . . . . . . . . . . . . . . $605.65
Outfits and equipments called for by the con-
tract, but not furnished . . . . . . . . . 3,852.18
                                                 ————— $4,457.83

                                                      $26,653.17

" I certify that the materials and labor which are extra to the
contract dated June 24, 1863, put upon the vessel ' Etlah,' built by
Charles W. McCord, amount in value to $116,111 (certificates hav-
ing been previously given for $85,000), and they are according to
directions which have been given from time to time.

                                        " ROBERT DANBY,
                              *" General Inspector Steam-Machinery for the Navy."*

" Approved :

                                             " F. H. GREGORY,
                                         *" Rear-Admiral Superintending "*

                                        " NAVY DEPARTMENT,
                                    " BUREAU ' CONSTRUCTION,' &C.,
" $26,653.17.]                                 " April 26, 1866.
" Approved in triplicate for twenty-six thousand six hundred and
fifty-three dollars and seventeen cents, payable by the paymaster
at New York.

                      ." JOHN LENTHALL, *Chief of Bureau.*"

                       " PAYMASTER'S OFFICE, U. S. NAVY,
                 " 29 BROADWAY, NEW YORK, May 11, 1866.

" Received of J. C. Eldredge, paymaster, twenty-six thousand
six hundred and fifty-three $\frac{17}{100}$ dollars, in full of the within bill,
and have signed duplicate receipts.
" $26,653.17.]                          CHARLES W. McCORD,
                                  " Per GILMAN, SON & CO., *Att'ys.*
" 1,887.   21,519 B$_2$."

" I certify that the above is a true copy of the voucher on file in
this office.
                             " S. J. W. TABOR, *Auditor.*"

.The powers of attorney under which the voucher was signed
by Gilman, Son & Co. are as follows : —

" Know all men by these presents, that I, Charles W. McCord,
of St. Louis, in the State of Missouri, have made, constituted, and
appointed, and by these presents do make, constitute, and appoint,

Gilman, Son & Co., or either member of said firm, in the city of New York, my true and lawful attorney, for me and in my name, place, and stead, to collect from the navy agent or authorized officer of the United States government all payments due or to become due to me for building an iron-clad vessel at St. Louis, Missouri, named the 'Etlah,' as per contract dated 24th June, 1863, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

"In witness whereof, I have hereunto set my hand and seal the twenty-fourth day of November, in the year 1863.

"CHARLES W. McCORD.    [SEAL.]

"Sealed and delivered in the presence of

"THOMAS L. THORNELL."

"STATE OF NEW YORK,   } ss.
    *County of New York,* }

"Be it known, that, on the twenty-fourth day of November, 1863, before me, a notary public in and for the State of New York, duly commissioned and sworn, dwelling in the city of New York, personally came Charles W. McCord, and acknowledged the above letter of attorney to be his act and deed.

"In testimony whereof, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

"THOMAS L. THORNELL, *Notary Public.*"

[Internal-revenue stamp, one dollar.]

"Know all men by these presents, that Charles W. McCord, of the city of St. Louis and State of Missouri, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Messrs. Gilman, Son & Co., of the city of New York, my true and lawful attorney, for me and in my name, and for my use, to ask, demand, sue for, recover, and receive all such sum or sums of money, debts, goods, wares, and other demands whatsoever which are or shall be due, owing, payable, and belonging to me, by any manner or means whatsoever; especially to receive any payments that are and will be due me by virtue of a contract entered into with the Navy Department to build a light-draft monitor named 'Etlah,' said contract bearing date June 24, 1863, for which I am

to receive, upon the full compliance of said contract, the sum of $386,000, in eight equal payments, the Navy Department reserving twenty-five per cent on such payments until completion and reception of said vessel: giving and granting unto my said attorneys by these presents full power and authority in and about the premises to have, use, and take all lawful ways and means, in my name, for the purposes aforesaid; and upon the receipt of any such debts, dues, or sums of money (as the case may be), acquittances, or other sufficient discharges, for me and in my name to make and give, and generally to do all other acts and things in the law whatsoever needful and necessary to be done in and about the premises; for me and in my name to do, execute, and perform, as fully and to all intents and purposes as I might or could do if personally present; attorneys one or more under him, for the purposes aforesaid, to make, constitute, and again at pleasure to revoke. Hereby ratifying and confirming all and whatsoever my said attorneys shall lawfully do in and about the premises by virtue hereof.

" In witness whereof, I have hereunto set my hand and seal, this second day of January, in the year of our Lord 1864.

" CHARLES W. McCORD."  [SEAL.]

" STATE OF MISSOURI,⎫<br>
*County of St. Louis,* ⎬ ss.

" Be it remembered, that on the second day of January, 1864, before me, the undersigned, John Jecko, a notary public duly commissioned and qualified, within and for the county aforesaid, came Charles W. McCord, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument of writing as party thereto, and acknowledged the same to be his act and deed for the purposes therein mentioned.

" In witness whereof, I have hereunto set my hand and affixed my official seal the day and year last above written.

" JOHN JECKO, *Notary Public.*"

The court decided that the claim for extras was barred by McCord's receipt, and that the United States was not liable to the contractor for the enhanced cost of labor and materials. Chouteau, assignee of McCord, brought the case here.

*Mr. Edward Lander* and *Mr. A. L. Merriman* for the appellant.

The receipt by Gilman, Son & Co. of a less amount than was actually due on McCord's claim, and which was outside

the contract, cannot bind him and discharge the debt. When certain special objects are enumerated in a power of attorney, the general words and power will be restrained by the objects specified. Byles 'on Bills, 32; *Rosseter* v. *Rosseter*, 8 Wend. (N. Y.) 494; *Wallace* v. *Branch Bank at Mobile*, 1 Ala. 565; *Kingsley* v. *Bank of State*, 3 Yerg. (Tenn.) 107; Story on Agency, 98, 99.

The extension of time required by the contractor for completing the work was caused solely by the changes and alterations in the original plan and specifications that were ordered by the bureau of construction and repair. The United States is therefore liable to him for such an amount as will cover his increased outlay, occasioned by the rise in the price of work and materials that took place during that time. *Dermott* v. *Jones*, 2 Wall. 1; *Dubois* v. *Delaware & Hudson Canal Co.*, 4 Wend. (N. Y.) 291; *Robson* v. *Godfrey*, 1 Hall (N. Y.), 236; *Lee et al.* v. *Partridge*, 2 Duer (N. Y.), 463; *Merrill* v. *Ithaca & Owego Railroad Co.*, 16 Wend. (N. Y.) 556.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

It appears from the findings of the Court of Claims that the proper officer of the Navy Department estimated the same extra work and material at $116,111, which that court now estimates at $172,273.55; and that McCord accepted this sum, if the voucher is binding on him, as the full value of his labor and materials, and acknowledged it to be payment in full.

His name is signed to this receipt by Gilman, Son & Co., his attorneys; and it is insisted by counsel that they could only bind him for the sum received, and not for its acceptance as full compensation. It is said in argument that they were bankers in New York, and had no other power than to receipt for such sums as might be paid them.

Two powers of attorney are produced from McCord to Gilman, Son & Co., — one of the date of Nov. 24, 1863, and the other Jan. 2, 1864. These are very full, and especially the latter. It makes them his true and lawful attorneys, " to sue for, recover, and receive all sums of money, debts, goods, wares, and

other demands whatsoever," and especially payments that are or will be due on his contract for building the "Etlah;" gives "them full power in and about the premises to have, use, and take all lawful ways and means in his name for the purposes aforesaid, and to make such acquittances, or other sufficient discharges, for me and in my name, and generally to do all other acts necessary and lawful to be done in and about the premises."

We are of opinion that this authorized Gilman, Son & Co. to accept payment of a voucher which declared on its face that it was the last, the full payment for the extra work done on the vessel, and thereby bind their principal to such acceptance.

But if we could be mistaken in this, the reasonable presumption is that Gilman, Son & Co. had nothing to do with obtaining this voucher from the Navy Department, but that it was so obtained by McCord himself, and forwarded by him to Gilman, Son & Co. for collection of the paymaster at New York. This is quite consistent with the fact that they were mere bankers. It is certainly fair to suppose that McCord presented his own statement of the account to the navy officers, and the final approval of the chief of the bureau of construction at Washington is dated April 26, 1866. The payment as indorsed on that same voucher by the paymaster at New York to Gilman, Son & Co. is dated May 11, 1866, which is just about a reasonable time for the voucher to have been received from Washington by McCord at St. Louis, and by him forwarded to Gilman, Son & Co. at New York for collection. If this be the true history of the voucher, McCord is bound by his own actions; for the voucher, while in his hands, had on its face the clearest statement that the sum therein allowed was "the full and final payment on all extras, and in full for all claims and demands for that work," and if he forwarded it in this shape to his bankers to get the money on it, without protest, he must be bound by that statement in the voucher.

The Court of Claims finds that the delay in completing the vessel was caused by the changes ordered by the United States, and that, owing to the rise in the prices of the labor and materials on the work done under the original contract, and without reference to the changes, the cost of that work was increased to the builder $118,283.20.

The appellants asserted a claim for this amount also, which the court refused.

It is very clear that both parties contemplated the probability that the work would not be completed at the precise period of eight months from the date of the contract. They also contemplated that changes would be made in the construction of the battery. They made such provision for these matters as they deemed necessary for the protection of each party. For the reasonable cost and expenses of the changes made in the construction, payment was to be made; but for any increase in the cost of the work not changed, no provision was made. There was a provision for delay, by which the contractor was to submit to pay $4,500 for every month of that delay. This provision, the only one on that subject, if strictly enforced, might have made him a still greater loser; but it seems to have been waived. But we are very clear that without any such provision he must be held to have taken the risk of the prices of the labor and materials which he was bound to furnish, as every other contractor does who agrees to do a specified job at a fixed price. It is one of the elements which he takes into account when he makes his bargain, and he cannot expect the other party to guarantee him against unfavorable changes in those prices.                    *Judgment affirmed.*