## CITY OF AKRON v. BARBER ASPHALT PAVING CO.

## BARBER ASPHALT PAVING CO. v. CITY OF AKRON.

(Circuit Court of Appeals, Sixth Circuit. May 28, 1909.)

Nos. 1,881–1,892.

1. MUNICIPAL CORPORATIONS (§ 375*) — CONTRACT FOR PAVING — GUARANTY OF WORK AND STIPULATION FOR REPAIRS—VALIDITY.

In an action by a city on a guaranty, in a contract for paving, that the contractor would keep the pavement in repair for 10 years, where the contractor received payment for the work in full it has no interest in the source from which the money was obtained which entitles it to set up as a defense that the contract was illegal because the city made a special assessment on abutting property for the entire contract price of the work although it had no power to levy such assessment for repairs, it having undoubted power to contract for the repairs and to pay for the same from its general fund.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 375.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§§ 488, 489*)—CONTRACTS FOR PAVING—STIPULA-
TION TO REPAIR—ESTOPPEL OF CONTRACTOR.

A city which levied and collected a special assessment to meet its ob-
ligation on a contract for paving a street would be estopped to set up the
illegality of the assessment to defeat recovery by the contractor on such
contract, and for the same reason, where it has paid the contractor in
full, the latter is also estopped to plead such illegality to avoid the con-
tract when sued on a guaranty to keep the pavement in repair contained
therein.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §§
488, 489.*]

3. MUNICIPAL CORPORATIONS (§ 368*)—CONTRACT FOR PAVING—STIPULATION TO
KEEP IN REPAIR—CONSTRUCTION.

Where, at the time a contract for paving a street was made which con-
tained a guaranty by the contractor to maintain the pavement in good
condition for 10 years, making all necessary repairs without further
charge, a street railroad was being operated on the street, the contract
must be presumed to have been made in the light of such fact, and the
contractor cannot avoid obligation on its guaranty on the ground that
the pavement was broken because of the insufficiency of the foundation
of the street railway tracks, nor because during the 10 years the city re-
newed the grant to the street railway company, nor because heavier cars
were used by such company, all of which must be presumed to have been
within the contemplation of the parties.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
901; Dec. Dig. § 368.*]

In Error to the Circuit Court of the United States for the Northern
District of Ohio.

In 1897 the city of Akron and the Barber Asphalt Paving Company entered
into a contract whereby the latter agreed, under a certain guaranty for a
period of 10 years from the date of opening to traffic, to improve Howard
street between Main and Federal (formerly Tallmadge) streets of that city
with stone curbing, and paving with genuine Trinidad pitch lake asphalt.
There was at the time a double-track street railroad extending through the
portion of Howard street so to be improved. Other tracks intersected these
tracks at several intervening cross streets. During the progress of the im-
provement, the paving company prepared and sold material to the street car
company for the foundations to be placed under its tracks, and the latter
company constructed such foundations. The paving company furnished the
rest of the materials and constructed a foundation six inches in thickness,
together with the asphalt surface along the length of the improvement, and
also across the roadway between the curbs, including the spaces within the
extreme outside rails of the double-track railroad and its intersecting rail-
roads.

The paving company seems to have kept its guaranty to the satisfaction of
the city until 1904, by restoring defects or broken portions. Differences then
arose between the city and the paving company in regard to the condition
of the street; the city complaining that the guaranty had not been kept, and
the paving company claiming that the fault was due to insufficient founda-
tions under street car tracks, for which the city was responsible, and that
larger and heavier cars were being operated over the tracks than were in use
at the time the asphalt contract was made, and that all this so injuriously
affected the asphalt paving as to render efforts to keep it in good condition
useless. The paving company in 1905 refused to do more. The city thereupon
restored the street, at a cost of more than $21,000.

In February, 1906, the city brought an action in the common pleas court
of Summit county, Ohio, against the paving company, to recover the money
so expended. The action was for alleged breach of the covenants of guaranty
of the contract, the city alleging that the paving improvement had been
opened for traffic October 30, 1897, and that defendant had been paid in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

full, according to the contract. Afterwards, on April 6, 1906, upon petition of defendant asphalt company, alleging that it was a corporation organized under the laws of West Virginia, the cause was removed to the Circuit Court of the United States for the Northern District of Ohio, Eastern Division. Later the asphalt company answered. admitting that in September, 1897, it entered into the contract: that the pavement was completed and opened for traffic on October 30, 1897; that the city had paid defendant the contract price; and that in the years 1904 and 1905 the surface of the pavement became defective. The rest of the answer amounts to a denial of the allegations of the petition not admitted, excepting a charge that whatever damage the city had suffered was by its own neglect, misconduct, and default. Subsequently, three amended answers were filed, also motions to strike out certain of the defenses. Upon the granting of motions to strike out, a bill of exceptions was allowed the asphalt company. Reply was filed, and the cause was tried twice to court and jury, the verdict in each instance being in favor of the city, the first one for $11,422, which, on motion of the company, was set aside and a new trial ordered: the second verdict was for $7,000.

Motions of both city and company for new trials were overruled. Judgment being entered on verdict, the city was allowed bill of exceptions setting out all the evidence. A writ of error was allowed each party, and each is prosecuting error in this court. The assignments of error, so far as necessary, are referred to in the opinion.

Jonathan Taylor, for City of Akron.
S. H. Tolles and M. M. Townley, for Barber Asphalt Paving Co.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). Generally stated, two questions are urged: One is, whether the city had power to make the contract; the other is, what defects the contract of guaranty was meant to embrace. The company presents the former, and the city the latter.

It is claimed by the paving company that the contract is void, because: First, it is ultra vires, for the reason that it is a contract embracing repairs at the expense of abutting lot owners through assessment, while at the date of the contract the only power possessed by the city to assess was for improvements. Second, the contract is alleged to have been let without competitive bidding. Third, no certificate of either the city auditor or city clerk, showing that the required money was in the treasury and duly credited, had been filed.

The paving company at the trial offered in evidence the resolution of council to improve Howard street. Objection to the offer was sustained, and this, with admission of the contract in evidence, is made the subject of one of the company's assignments of error. The resolution provided that the cost and expense of the improvement should be assessed upon abutting lots in proportion to benefits, that the assessment should be payable in five annual installments and that bonds should be issued in anticipation of collection.

Distinction is urged between the power of assessment for improvement and for repair. Counsel cite decisions from states other than Ohio which show that this question would be material if made directly against the assessment by abutting lot owners. Our attention has been called to only one decision where the rights of such owners were not involved. Portland v. Bituminous Paving Co., 33 Or. 307,

52 Pac. 28, 44 L. R. A. 527, 72 Am. St. Rep. 713. In the note to that case as reported in 44 L. R. A. 527, the other decisions relied on by counsel are cited. In view of the statutory powers of the city of Akron and the Ohio decisions to which we shall refer later, we need not consider the Portland Case.

In determining whether the paving company is in a position entitling it to question the power of the city to include—if it did include—in the assessment against the lot owners the cost of repairs, some admitted facts should be observed. In the first place, the paving company admits that it has been paid in full. In the next place, this objection challenges the source from which the money so paid and received came. We do not discover that mention was made of the assessment in the contract or specifications. Apparently the money, not its origin, was the material feature.

The argument concedes that there was power in the city to levy an assessment for the improvement of the street, as distinguished from its repair. Rev. St. Ohio 1897, §§ 2304, 2263, 2264, 2274, 2284. It also concedes that the city had power to levy an assessment for street repairs, but points out limitations as to mode and time. Rev. St. Ohio 1897, §§ 2307, 2311. It is thereupon urged that it was customary to pay for repairs out of the general fund. This concedes, as necessarily it must be conceded, that there was power in the city to raise a general fund by taxation, for otherwise the power and duty to repair could not be carried out. Rev. St. Ohio 1897, § 1692, par. 18; Id. 2640. Manifestly, there was power in the city to pay for both paving and repairs from the general fund.

Here, then, were two sources of authority in the city to raise money to pay for street work, one of the sources confessedly embracing street repairs. The first source was through sale of the bonds to be issued in anticipation of an assessment as before pointed out (Rev. St. Ohio 1897, § 2704); the other, the general fund. The last analysis, then, is not that the city did not possess authority to provide for repairs, but that it did not formally exercise the proper power. Now, as against any one merely receiving the money, this was but a mistake at most in choice of power. How does such a mistake, if mistake it was, concern the paving company, and, besides, is not the company met by estoppel?

As regards the interest of the paving company in the source from which the money paid under the contract was derived, but little additional need be said. It may be assumed that, if the lot owners had seasonably objected, they might have avoided the assessment so far as it may have included repairs. The limitation, if there was any as to repairs, must have been imposed for the protection of the lot owners. But one may waive a right—that is, a civil right—even though it be secured by constitutional provision. We discover no evidence of objection on the part of any of the lot owners. They must then be treated as having waived such rights as they may have had in this respect. It would be an abuse of the law to ignore the attitude of the lot owners, and place a stranger to their rights in the position they might have taken originally. That would be to use rights waived by the lot owners as a shield for a person who never

had any interest in those rights, or any authority either to enforce or waive them.

As to estoppel: In Mt. Vernon v. State, 71 Ohio St. 428, 73 N. E. 515, 104 Am. St. Rep. 783, a proceeding in mandamus, the relator sought a writ to require the city council to pass an ordinance providing for the issuance and sale of city bonds, and out of the proceeds to pay relator the cost of an improvement which was made and completed under a contract between the city and relator. The writ was denied, but not for any reason important here. In the answer of the city, it was alleged that the contract was made by virtue of a special act of the Legislature empowering cities of the class and grade of Mt. Vernon to improve streets with vitrified brick, asphalt, etc., and to pay one-half the cost through the issue of bonds, and that this act was violative of the Constitution of Ohio; also that the city clerk had not certified that the money required was in the treasury and credited.

After referring to the change of ruling touching municipal classification, and to the fact that the act in question had not been before the court, it was assumed "that the act would have been held by this court to have been unconstitutional." The relator insisted upon estoppel as against the city, because it had received the benefits of full performance of the contract on the part of relator. Of this it was said in the opinion (page 448 of 71 Ohio St., page 518 of 73 N. E. [104 Am. St. Rep. 783]):

"It may be accepted as the law that there can be no estoppel where there is an entire absence of power; but the answer to that in this case is that the corporation was not acting ultra vires, that is, without any power whatever under the act in question or from any other source."

Four of the judges, one dissenting, concurred in the first paragraph of the syllabus (page 428 of 71 Ohio St., page 515 of 73 N. E. [104 Am. St. Rep. 783]):

"Where a municipal corporation has entered into a contract with an individual under and by virtue of a statute which is unconstitutional, and the subject-matter of the contract is not ultra vires, illegal, or malum prohibitum, and the facts are such, as against the corporation, as would estop an individual from setting up as a defense the unconstitutionality of the statute, the municipal corporation will also be so estopped."

The theory of that decision was that, although the proceedings under which the contract of improvement was made were taken pursuant to an act which the court treated for the purpose of the case as unconstitutional, yet the city could, through different proceedings taken under other statutes, have made a valid contract. The distinction is between the total absence of power and the irregular exercise of power.

Moreover, long before the contract now in question was executed, it was settled by decisions of the Supreme Court of Ohio that persons may by their conduct estop themselves from contesting liability upon assessments levied in proceedings taken under an unconstitutional statute. Some of the decisions are cited and reasons stated in the Mt. Vernon Case, 71 Ohio St. 449, 73 N. E. 515, 104 Am. St. Rep. 783. The doctrine has been followed by the Supreme Court of the United States. In Shepard v. Barron, 194 U. S. 553, 567, 24 Sup.

171 F.—3

Ct. 737, 741, 48 L. Ed. 1115, the validity of an assessment levied by the county commissioners of Franklin county, Ohio, was contested, upon the grounds that it was levied under an unconstitutional statute, and according to feet frontage instead of benefits. The property holders had petitioned for the improvement, and otherwise promoted it. Mr. Justice Peckham said:

"On principles of general law, we are satisfied that the plaintiffs are not in a position to assert the unconstitutionality of the act under which they petitioned that proceedings should be taken and that the assessment should be made in accordance with those provisions. This principle has been recognized in Ohio many times. See State v. Mitchell, 31 Ohio St. 592, 609; Tone v. Columbus, 39 Ohio St. 281, 296, 48 Am. Rep. 438; City of Columbus v. Sohl, 44 Ohio St. 479, 481, 8 N. E. 299; City of Columbus v. Slyh, 44 Ohio St. 484, 8 N. E. 302; Mott v. Hubbard, 59 Ohio St. 199, 211, 53 N. E. 47."

If the owners of the lots along Howard street had petitioned for its improvement and had induced the adoption of the very proceedings which were passed by council in authorizing the contract, it is clear that they would not be heard to question the assessment. Moreover, the resolution to improve Howard street provided, as before stated, that the assessment should be payable in five annual installments. The present action was brought eight years after the assessment might have been levied. Suppose the assessment had been levied in due course, and the lot owners had voluntarily paid it in full; then, whether we consider the lot owners as estopped to deny liability upon the assessment, or the city as having collected the assessment, the city would be in no position to resist payment if it were in default. The contention of the paving company would, however, even if it be in default, place it in a better position than the city would be if it were in default. The mutuality of estoppel is a complete answer to any such theory.

Turning now to the question touching competitive bidding, we think the objection relates to the interpretation of a portion of a statute which in terms has been settled by the Supreme Court of Ohio. Ampt v. Cincinnati, 6 Ohio N. P. 208, affirmed 60 Ohio St. 621, 54 N. E. 1097. See Yaryan v. Toledo, 8 Ohio Cir. Ct. R. (N. S.) 1, affirmed 76 Ohio St. 584, 81 N. E. 1199. The same thing must be said of the objection as to certificates of the city auditor and city clerk. Cincinnati v. Holmes, Adm'r, et al., 56 Ohio St. 104, 46 N. E. 514, reversing Holmes v. Avondale, 11 Ohio Cir. Ct. R. 430, the name of Cincinnati having been substituted for Avondale by reason of annexation. The act in question in that case was enacted under a special classification; and this was true of the act now under consideration. It is true that, in applying the Holmes decision, reliance must be placed upon the bond issue provided for in the rejected resolution to improve; but in Mt. Vernon v. State, supra, the act treated as unconstitutional, in terms excluded application of section 2702; yet the court, finding power in the city otherwise than under the unconstitutional act, denied the contention upon this point. Besides, in the present instance, the money had in fact been paid and received before suit was brought.

We therefore hold: (1) That the paving company has no interest in or right to question the source from which the city derived the

money paid and received under the contract; and (2) that the company is estopped to deny that the city duly exercised its appropriate power when it authorized and entered into the contract.

The remaining question concerns the scope and effect of the contract. The controversy in the court below seems to have hinged upon the single question, whether the paving company could be held for breakages of the pavement caused by defects in the foundations under the street car tracks? The city claimed that the whole pavement was in such condition as to require resurfacing, and sought accordingly to recover the whole cost. The court below allowed testimony to be offered showing the condition of the tracks and their foundations, and also the effect of operating cars over them which were heavier than those in use when the contract was made. It was claimed that the tracks would yield to the weight of the cars and so break the adjoining paving and expose the pavement to the introduction and effects, between foundation and asphalt, of water and frost. The ruling in substance was that the city could not recover for the cost of restoring the portions which were injured in this way. The city's assignments of error should, we think, be tested by reference to the issue thus made.

The paving company in terms agreed, for stated prices per units of measurements of materials and labor, to furnish all material and do all work necessary to complete in every respect, in a good and substantial manner, ready for use, the improvement of Howard street; and this was to be in accordance with its "proposal, specifications and explanations." The specifications contain, among other things, the following guaranty:

"The pavement will be laid under proper official inspection. It will be guaranteed for periods of five and ten and fifteen years from the date when it is opened to traffic, and during said period all defects in the pavement due to its proper use as a roadway will be repaired and made good without additional expense."

The pleadings show, and it appears to have been accepted as true at the trial, that the period of 10 years mentioned in the guaranty was adopted. And bearing the same date as that of the proposal, and addressed like it to the council of the city of Akron, and signed by the paving company through the same agency as appears in the signature to the proposal and likewise to the contract, was a communication, which we conceive to be one of the "explanations" mentioned in the contract. In this instrument it is stated:

"Our understanding of our guarantee is a pavement at all times during any guarantee period that may be selected * * * in as perfect a condition as the day it was laid, and that the pavement when turned over to the city, at the end of such guarantee or maintenance period, shall show seventy-five (75) per cent. of the original thickness called for in the contract, and if for any reason the pavement is less than seventy-five (75) per cent. of its original thickness, then the pavement shall be renewed to such thickness before our bond is released."

As showing how the parties to the contract understood the guaranty, we think it competent to refer to the language of this "explanation," for, as before mentioned, it seems to have been made part of

the contract. The language there employed amounted to a guaranty that the pavement should at all times during the period of 10 years be "in as perfect condition as the day it was laid," and that at the end of the period the pavement should "show seventy-five (75) per cent. of the original thickness called for in the contract." But apart from that instrument, we think the effect of the contract was to obligate the paving company to furnish a pavement which should be in good and substantial condition for traffic throughout a period of 10 years.

Can failure of performance of such a contract be excused on the ground that the foundations of the street car tracks were out of repair? We understand from the charge of the court that performance was excused to the extent that the pavement was impaired by defects in these foundations. The conditions existing at the date of the execution of the contract must be considered. There are several references made to railroads in the papers constituting the contract. Among these references is one to the street railways in Howard street, where the city reserved the right in awarding the contract either to include or exclude paving in the space between the rails and one foot outside thereof. Clearly, then, the parties had the subject of street car tracks in mind. But it nowhere appears in the contract, as we understand it, that performance of the paving company's covenant was to be excused by reason of defects existing in the track foundations during the life of the guaranty.

The parties seemed, at the time the work was begun, to understand that the city was not required actively to concern itself about the track foundations. As mentioned in the statement, foundations for the car tracks appear from the testimony to have been laid by the street car company, while the paving company was engaged in its work upon the improvement. Indeed, the paving company furnished and mixed the materials for the track foundations; and it does not appear to have made any objection to the foundations as laid. With the knowledge the paving company thus obtained of the foundations, and its apparent acquiescence in their sufficiency, it proceeded to construct the pavement foundations and to place the asphalt surface thereon throughout the length and breadth of the improvement, including the spaces between the street car rails. This was done, although, according to evidence offered and received at the trial, it was shown that at the date of the paving company's contract the council could require the street car company to repave the spaces between the rails of the tracks with the same kind and quality of material as that designed by the city to be placed outside of the tracks, and thereafter to keep such spaces in repair. But here, again, we discover no provision in the contract which in terms would excuse performance of the paving company's covenant of guaranty on account of any failure or neglect of the city to require the street car company to keep in repair either the paving between rails or the track foundations.

In Railroad Co. v. Smith, 21 Wall. 255, 263, 22 L. Ed. 513, a question arose as to the obligatory force of a covenant to construct a swinging drawbridge over a river, in accordance with plan and trac-

ings, for a stipulated price. The railroad company had caused the pier on which the bridge was to swing to be constructed, and the contract in question seems to have been simply for the bridge. The action was on the contract for the price, and the company alleged, among other things, a defective construction of the bridge, and claimed by way of recoupment to deduct damages. The court below instructed the jury that for any defects in the pier the defendant was alone chargeable, and that, if the difficulty in turning the bridge arose from a defect in the pier and not in the bridge, no damages could be recovered. The evidence showed that the pier had been built under the supervision of an agent of the bridge contractors, and in accordance with his directions. This same agent was superintendent in the construction of the bridge. Mr. Justice Field, speaking of this agent and also of the defect in the pier, said:

"His adoption of the pier as built was, therefore, directly within the sphere of his agency. The alleged defect in the pier, if any existed, consisted in its variation from a level as it was originally laid, and of course, as justly observed by counsel, was patent to the builders at the inception and at every stage of the construction. Under such circumstances, the contractors can no more justify their proceeding with the work without satisfying themselves of the fitness of the pier for the superstructure intended than they could justify the erection of the bridge at some other point on the river. In the case of Jones v. Dermott, 2 Wall. 7, 17 L. Ed. 762, it was held that the performance of a contract to build a house for another on his soil, and that the work should be executed, finished, and ready for occupation and be delivered over on a specified day, was not excused by the fact that there was a latent defect in the soil in consequence of which the walls sank and cracked, and the house became uninhabitable and dangerous, and had to be partially taken down and rebuilt on artificial foundations. The present is a much stronger case for the application of the same principle. Here there was no latent defect discovered after the work was commenced. Whatever defect there was, was necessarily known to the agent of the contractors under whose supervision both the pier and the bridge were constructed. His knowledge in this particular was their knowledge. The contract called for the construction of a bridge upon which the cars of the company could cross, and implied that the bridge should be serviceable for that purpose and capable of being used with the like facility and ease as similar bridges properly constructed are used. If the condition of the pier, by its variation from a level or any other cause, prevented this result from being attained, it was the duty of the contractors to insist upon its alteration, or to make the necessary alteration themselves."

We have seen that the paving company had knowledge of the existence of the tracks when the contract was executed, and of the construction of the track foundations when the pavement was made. The paving company, as it seems to us, is in no better position than the bridge contractors were in Railroad Co. v. Smith. If, as there pointed out by Mr. Justice Field, performance is not excusable by reason of a latent defect discovered after the contract is made, it is plainly not so where the difficulty was known, or by the exercise of ordinary precautions could have been discovered, before the execution of the contract. It was the duty of the paving company, then, either to insist upon having the contract provide against performance of the covenant of guaranty in any case of imperfect tracks or track foundations, or to make good its covenant in the form adopted.

It was long ago settled that, if performance of a contract by one of the parties to it is rendered impossible by the act of the other

party, such act will excuse performance. Dermott v. Jones, 2 Wall. 1, 7, 17 L. Ed. 762; United States v. Gleason, 175 U. S. 588, 602, 20 Sup. Ct. 228, 44 L. Ed. 284. According to the evidence, however, it was not impossible for the paving company to make its guaranty good. It may be true that performance was rendered more expensive on account of the condition of the track foundations, but that is not enough. Jacksonville, etc., Ry. v. Hooper, 160 U. S. 515, 527, 16 Sup. Ct. 379, 40 L. Ed. 515; Choteau v. United States, 95 U. S. 61, 68, 24 L. Ed. 371. It would require a new provision to be introduced into the contract to escape these rules of law. While it is not meant to sanction municipal neglect, if neglect there was, yet, as said by Mr. Justice Swayne in The Harriman, 9 Wall. 173, 19 L. Ed. 629:

"It is the province of the courts to enforce contracts, not to make or modify them. When there is neither fraud, accident, nor mistake, the exercise of dispensing power is not a judicial function."

The contention that the statutory duty of the city to keep its streets in repair was, under a familiar general rule, imported into the paving contract, and that the city's failure to require the track foundations to be kept in repair excused performance of the contract for that reason, does not advance the argument. Regarding matters like track foundations, whose presence and condition were known to the parties originally, as before pointed out, and whose disrepair was occasioned by use, we think the paving company's undertaking operated practically, as between the company and the city, to relieve the city for a period of 10 years from the active discharge of its statutory duty to repair this portion of Howard street. To hold that the company, in respect of a matter of this character, could set up a general statutory duty of the city against the company's express obligation to furnish a pavement which should be in good and substantial condition for 10 years, would, we think, be to violate settled principles of contract.

In regard to the city's renewal of the street car grant, as well as of the introduction of heavier cars upon the tracks, they must, we think, as matter of law, be treated as having been within the contemplation of the paving company when signing the contract. The tracks were in the street and cars were being operated over them, and no provision was made respecting either dimensions or weight. Nothing violative of any statute is claimed in regard either to the renewal of grant or the size and weight of the cars. Those matters were plainly sanctioned by the law, and they involved only such street uses as every one dealing with streets must anticipate. Rev. St. Ohio 1897, §§ 3438, 3443–11.

Since the judgment will have to be reversed and a new trial awarded, we do not think it proper to express anything in regard to the city's assignments of error concerning the measure of damages, further than to say that recovery cannot involve any cost or expense incurred for a better or more enduring pavement than the one the company agreed to furnish during the time covered by its failure in that respect.

The assignments of error of the paving company will be overruled, and the judgment in favor of the city will be reversed and a new trial awarded; the paving company to pay the costs in each proceeding in error.