## TOBIN QUARRIES, Inc. v. UNITED STATES.
### No. 46433.

United States Court of Claims.
July 11, 1949.

WHITAKER, J., dissenting.

Frank L. Martin, (John M. Martin, and Martin & Martin, on the brief), for plaintiff.

John B. Miller, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

On April 11, 1940, plaintiff entered into a contract with defendant to construct a rock-fill dike extending from Moose Creek Butte to Tanana River in Alaska. In the construction of this dike the plaintiff was required to get the rock from Moose Creek Butte, which was represented to be "a solid rock formation." The specifications required that 90 percent of the rock placed in the dike should range in size from ½ cubic foot to 1 cubic yard, and that rock weighing less than 25 pounds should not exceed 10 percent of the total.

It turned out that the rock in the butte was quite friable, and it proved impossible to get rock of the required size without excessive waste. The contractor called this condition to the attention of the contracting officer and asked for a change in the specifications and for compensation for all the rock excavated, whether placed in the dike or not. The contracting officer made an examination of the site and issued Change Order 1, which permitted the placing in the dike of rock weighing less than 10 pounds, instead of 25 pounds, to the extent of 15 percent of the total volume, but the Change Order made no allowance for the excessive waste already encountered.

However, even under this Change Order it was found impossible to secure rock of the required sizes without excessive waste, and the contracting officer then issued Change Order 2, which further modified the specifications to permit the use of quarry-run rock, irrespective of size, except between certain stations in the dike. This

Change Order, however, required both faces of the dike to be armored with rock not less than ½ cubic foot in size and with smaller rock, which was not to exceed, however, 15 percent of the volume. Later, the plaintiff asked for a further modification of the specifications due to its inability to secure the required sizes, and finally Change Order 3 was issued eliminating the necessity for armoring the dike on its down-stream face, as required in Change Order 2, except between certain stations. The contract was completed under this Change Order.

The plaintiff sues for its excess costs incurred prior to the issuance of Change Order 2, and also from the time the cost of performance under Change Order 2 became excessive until it was relieved from its requirements by Change Order 3. It also sues for another item to be mentioned later.

The plaintiff sues on the ground that the Government misrepresented the character of the rock in the butte, and also that the plaintiff was entitled to an equitable adjustment of compensation under Article 4 of the contract, because it encountered unforeseen conditions during the progress of the work.

■ There was no intentional misrepresentation on the part of the Government. There was innocent misrepresentation, but that is only another way of saying that the Government, as well as the plaintiff, was unaware, at the time the contract was made, of the true character of the rock in the butte. The fact that the plaintiff was required by the contract to get its rock from the butte shows that both parties supposed that the rock to be obtained there was suitable for the work, and could be used on a reasonably economical basis. Neither party expected that, to get proper rock from the butte, great quantities of material would have to be picked over, most of which would have to be disposed of as waste. We think, therefore, that the problems of misrepresentation, and of unforeseen conditions not contemplated by the parties really constitute a single problem. And we think that unforeseen conditions, within the meaning of Article 4 of the contract were encountered.

■ The Government urges that the following provision, contained in each of the three change orders, "It is further understood and agreed that all other terms and conditions of said contract shall be and remain the same," forecloses the plaintiff from any relief under Article 4. We do not agree. This provision, usual in change orders, is not inconsistent with the continuing right of a contractor to have the benefit of other contract provisions, such as Article 4. A change order, in a particular case, might be intended as a settlement of an asserted right under that article, and if so, it would have that effect. Here there is no showing of such an intent. The change orders looked only to the future, and contained no provision except what was regarded as adequate to keep the contract work going in the future. There was no element of compensation in them for already incurred costs due to unforeseen conditions. And they did not eliminate Article 4 for the future, if still further unforeseen conditions should be encountered. The extensive conversations and correspondence which took place between the plaintiff and the officials of the Government do not indicate that either party intended the provision in the change orders to constitute a waiver by the plaintiff of its right to relief under Article 4. If the Government officials had so intended, the short answer to the plaintiff's claim would have been to say that the matter had already been settled. Instead, the matter was carried along for some two years, and was concluded by a decision of the Chief of Engineers that "a changed condition has not been shown". This conclusion was not based upon any finding of fact by the Contracting Officer, to which the plaintiff was entitled under Article 4. The Contracting Officer could not have made such a finding, in view of the reports which his own agents had made to him. Since the Government did not follow the procedure provided in the contract for the making of administrative decisions, the question is open for our decision on the merits. We think that the decision of the Chief of Engineers was wrong, and that the plaintiff was entitled to an equitable adjustment under Article 4. We have allowed the plain-

tiff, on this item of its claim, the difference between what it cost it to do the work and what it would have cost it if the unforeseen conditions had not been encountered. As shown in Finding 50, this difference is $23,658.63.

As shown in Findings 38, 39, and 40, the Government, in issuing Change Order No. 3, reduced the price to be paid for quarry-run rock from the contract price of $1.09 to 60 cents per cubic yard, which change the plaintiff protested, saying that it would be accepted only so that it would be possible for it to finish the job. We think that, in the circumstances, the Government had no right to so change the contract price, and that for it to insist upon the reduction at a time when the plaintiff was so involved in the job that it had no choice in the matter, amounted to economic coercion. The plaintiff should receive the amount of which it was deprived by the reduction, which is $6,384.21.

The plaintiff may have a judgment for $30,042.84. It is so ordered.

JONES, Chief Judge, and HOWELL and LITTLETON, Judges, concur.

WHITAKER, Judge.

I dissent. My view of the case is set out in the opinion heretofore filed.

At the time the first change order was issued plaintiff had pending a request for a change in the specifications for future work and an additional payment for work already done. The change order was issued in response to this claim. It was a settlement of it. It lowered the specifications for future work, but made no allowance for work already done. Instead, it said that "all other terms and conditions of the contract should remain the same." This I think constituted a denial of the claim for an additional payment for work already done.

The fact that the contracting officer and the head of the department did not raise this defense does not prove, in my opinion, what the majority says it proves, because the contracting officer who ruled on the claim after the work had been finished was a different person from the one who issued the change order. There is no showing that he knew what was in the mind of the contracting officer who issued the change order.

His failure to raise this defense is not a waiver of it. A Government officer has no right to waive a defense available to the Government except in the compromise of a claim. No compromise is involved here.