**STATE of Alaska, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**A & G EXCAVATING CO., Inc., and Chris Berg, Inc., Appellees.**

**No. 579.**

Supreme Court of Alaska.

Dec. 1, 1966.

Warren C. Colver, Atty. Gen., and Donald T. Kane, Asst. Atty. Gen., Juneau, for appellant.

Neil S. Mackay, Anchorage, Stuart G. Oles, Allen, DeGarmo & Leedy, Seattle, for appellees.

OPINION

Before NESBETT, C. J., DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

Appellee Chris Berg, Inc., contracted with appellant on September 15, 1961, to furnish and deliver all materials and to perform the labor required for certain highway construction on the Copper River Highway between miles 13 and 15. The appellee A & G Excavating Co., Inc., was a subcontractor. The construction work was performed as required, but during performance appellees claimed that conditions at the construction site differed materially in several respects from those indicated in the contract bid documents and filed claims for an equitable adjustment with the Contracting

Officer, who was also the Alaska Highway Commissioner.

The above procedure was in accordance with Clause 4 of the General Provisions of the contract which provides that notification of conditions at the site differing materially from those indicated in the contract should be given to the Contracting Officer who should investigate and if he finds that conditions do materially differ and cause an increase or decrease in the cost of performance of the contract, an equitable adjustment should be made. This clause also provides that if the parties fail to agree upon an adjustment, the dispute should be determined as provided in Clause 6 dealing with "Disputes".[1]

Clause 6 provides that disputes not disposed of by agreement shall be decided by the Contracting Officer, that the Contracting Officer's decision shall be final unless appealed to the Contracts Claim and Review Board, and that the determination of the Board shall be final unless it is fraudulent or capricious or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.[2]

Appellees' claims were denied by the Contracting Officer and an appeal was taken to the Contracts Claim and Review Board which also denied the claims. Appellees then brought suit in the superior court where, after trial, they obtained a judgment in the sum of $54,728.20, plus attorney's fees, costs, and interest.

The trial court found that physical conditions at the site differed materially from those indicated in the plans prepared by the state pursuant to which bids had been submitted. Appellant contested this point below but does not maintain it as a point on appeal.

Appellant's first point is that the trial court erred in permitting appellees to present evidence on the merits of their claims without first determining whether the Contracting Officer's decision should be accorded the finality provided for in Clause 6 of the General Provisions of the contract.

With respect to the administrative hearings on appellees' claims of changed conditions, the trial court's Finding No. 12 states in part:

Following an initial adverse Contracting Officer's Decision thereon, a hearing was held at Juneau, Alaska before the Contract Claims and Review Board (purportedly for General Provision 6, Disputes, of the contract). At this hearing only witnesses for the contractor testified and the State offered no evidence or testimony. Thereafter the final Contracting Officer's decision was rendered. * * * It is the finding of this Court that said

1. Clause 4 of General Provisions, in pertinent part states:
   CHANGED CONDITIONS
   The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting Officer in writing of: (1) subsurface or latent physical conditions at the site differing materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this contract. The Contracting Officer shall promply [sic] investigate the conditions, and if he finds that such conditions do so materially differ and cause an increase or decrease in the cost of, or the time required for, performance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly. * * * If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Clause 6 hereof.

2. Clause 6 of General Provisions, in pertinent part states:
   DISPUTES
   [A]ny dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer * * *. Such decision shall be final and conclusive unless * * * the Contractor appeals therefrom * * * to the Contracts Claim and Review Board. Findings and determination of the Board shall be the basis of final decision to be issued by the Contracting Officer. This final decision shall be final and conclusive unless the decision is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

Contracting Officer's Decision was and is not supported by substantial evidence and is, in fact, both contrary to the evidence as submitted to the hearing before the Contracts Claim and Review Board and contrary to law in that it improperly interprets and applies the Contract provisions and accordingly is neither binding not conclusive upon either the plaintiffs or this Court.

At the commencement of the trial counsel for appellant objected to the introduction of any testimony until the court had first determined whether the decision of the Contracting Officer was final. The objection was overruled. On appeal it is argued that the objection should have been sustained at least until the appellees had established that the decision of the Board was not supported by substantial evidence or that the decision was contrary to the evidence.

Uncontradicted testimony given at the trial establishes that the hearing on the Contracting Officer's denial of appellees' claims was not, in fact, a "hearing" within the accepted meaning of the term. No transcript of any of the proceedings was ever prepared.

The only witness who described the hearing testified, in part, as follows:

Q And, did you personally appear at the hearing which that board held?

A I did.

Q Would you describe to us generally what occurred at that hearing?

A We went * * * [to] the board with the supposition that the board was going to hear our complaint and ask us various questions. We presented what we had there and they said, 'That's it.' * *. *

Q Well, * * * did the State offer any evidence at this hearing?

A No evidence at all.

Q Did the State offer any exhibits or engineers or witnesses of any sort?

A I believe the Project Engineer was there, but—

Q What did he do?

A He sat there.

Q Well, did the board take any evidence at all other than yours?

A No.

Clause 6 of the Contract which appellant argues should give conclusiveness and finality to the Contracting Officer's decision states that such decision shall be final and conclusive:

unless the decision is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

Implicit in the above wording is recognition of the right to court review of the Contracting Officer's decision. Before a court could determine whether a given decision is fraudulent, arbitrary, or so grossly erroneous as to imply bad faith, or not supported by substantial evidence, it must have available for review all of the evidence, both oral and documentary, presented on the appeal, as well as the findings of fact and the conclusions of the Contracting Officer based upon that evidence. This would be as true where the decision was in favor of the claimant as when in favor of the Contracting Officer.

In the case before us the only "record" of the appeal hearing is a letter dated November 30, 1962, from the Acting Commissioner of Highways (the Contracting Officer) to the appellees advising them that the Contract Claims Review Board "has studied the claim submitted by you on November 2, 1962, as well as evaluated the evidence obtained at the hearing and the contract document" and had denied the claims.

■ Under the circumstances, the trial court's finding that the Contracting Officer's decision was not supported by substantial evidence and was contrary to the evidence submitted at the hearing was justified. In order for a decision against the claim to be supported by substantial evidence, ordinarily some evidence against the claim must have been formally presented at

the appeal hearing. If the adverse decision is based upon evidence presented by the claimant himself, this should at least be stated and the evidence incorporated into findings, so that a reviewing court could determine whether the decision should be accorded the finality provided for in the contract. Because it appears that the only evidence presented at the appeal hearing by the appellees was in favor of their claims, the trial court's finding that the Contracting Officer's decision was contrary to the evidence presented is also justified.[3]

We find no error in the trial court's findings concerning the appeal hearing.

Appellant's second point is that the trial court's award of $54,728.20 for increased costs of performance due to changed conditions is $20,628.87 higher than is justified.

The determination of this question must turn on whether the method of calculating the increased costs shall be by "equitable adjustment" or "force account".

Appellees contend that Clause 4 of the General Provisions of the contract governs and that according to its terms increased costs caused by changed conditions are to be compensated by an "equitable adjustment"; that "force account" methods of calculating the increased costs are not applicable and that this is evident from the court's findings where all allowances are referred to as "equitable adjustments" and by the statement of the appellant's counsel during trial that if a changed condition was found, an "equitable adjustment" should be made rather than a calculation of the increased costs by "force account" methods. Appellees cite a number of authorities in support of their position.

Appellant contends that Articles 4.2, 9.3, and 9.5 of the booklet entitled "Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects" (FP–57) are applicable and require that the increased costs caused by changed con-

ditions be calculated by the "force account" method.

The parties to this appeal have conceded that this booklet (hereinafter FP–57) was incorporated, in its entirety, into the contract as part of the specifications. It is contended, and it has been held,[4] that where the specifications conflict with contract provisions, the contract governs. However, a careful reading of Clauses 3, 4, and 6 of the General Provisions of the contract and Articles 4.2, 9.3, and 9.5 of FP–57 reveals that while their provisions overlap in some respects, they do not conflict in any respect and we have concluded that Articles 4.2, 9.3, and 9.5 of FP–57 supplement Clauses 3, 4, and 6 of the contract.

Clause 4[5] of the General Provisions requires the Contracting Officer to investigate upon notification by the contractor of changed conditions and *if* he finds that the changed conditions warrant, "an equitable adjustment shall be made and the contract modified in writing accordingly." If the parties fail to agree upon an adjustment, the dispute shall be determined by Clause 6[6] of the contract. Clause 6 provides that "any dispute concerning a question of fact * * which is not disposed of by agreement shall be decided by the Contracting Officer" and if appealed, it shall be decided by the Contracts Claim and Review Board. Pending final decision of a dispute, "Contractor shall proceed diligently with the performance of the contract as directed by the Contracting Officer."

Clause 3 of the contract, concerning changes ordered in writing by the Contracting Officer, provides that an increase in cost as a result of the change shall be compensated for by an "equitable adjustment" which "shall be made only in accordance with Article 4.2 of the specifications." Article 4.2 of FP–57 refers to the "Changes" and "Changed Conditions" of the General Provisions (Clauses 3 and 4 respectively) of the contract clauses and states that it is of

3. See Roberts v. United States, 357 F.2d 938, 944 (Ct.Cl.1966).

4. Loftis v. United States, 76 F.Supp. 816, 826, 110 Ct.Cl. 551 (1948).

5. Quoted in pertinent part in note 1 supra.

6. Quoted in pertinent part in note 2 supra.

the essence of a highway construction contract to recognize a normal and expected margin of change within the meaning of the before mentioned clauses. The article then provides that any adjustment in compensation because of a change shall be made in accordance with the provision of Article 9.3.[7]

Article 9.3 provides in applicable part that, pursuant to Article 4.2, upon demand of either party, an equitable adjustment satisfactory to both parties should be made in the basis of payment if any of three enumerated changed conditions exist. The last paragraph of this article states:

> If prices cannot be agreed upon, the contractor shall proceed with the performance of the work on a force-account basis in accordance with the provisions of article 9.5.

It is undisputed that appellees' claim of changed conditions was denied by the Contracting Officer. Since this denial removed all reason for the parties to attempt to agree upon the "equitable adjustment" contemplated in Clause 4 of the contract and in the opening paragraph of Article 9.3, it seems clear enough, and the parties seem to agree, that appellees were nevertheless required to proceed with performance of the work. Clause 6 required that performance of the contract continue "as directed by the Contracting Officer". Article 9.3 required that performance be continued "on a force-account basis in ac-

cordance with the provisions of Article 9.5."[8]

It appears that the term "equitable adjustment" as employed in Clause 4 of the contract and in the first paragraph of Article 9.3 was meant to describe a basis of payment which had been mutually agreed upon and which was "satisfactory to both parties" after the Contracting Officer had found that changed conditions existed. Since the Contracting Officer denied that changed conditions existed, understandably no attempt was made to agree upon an "equitable adjustment" or a basis of payment "satisfactory to both parties". Under these facts the term "equitable adjustment" became no longer relevant as a criterion for determining the basis of payment. The last paragraph of Article 9.3, which provides in part that "if prices cannot be agreed upon" work shall be performed on a force account basis, became controlling.

"Equitable adjustment" is not defined in the contract nor is it defined in FP–57. In the sense in which it is used it acquires a definite meaning only after the Contracting Officer and the Contractor have mutually agreed upon a basis of payment "satisfactory to both parties". If FP–57 were not a part of the specifications to provide specifically for the method of payment for work performed under these circumstances, then appellees' argument that the compensation allowed in a reviewing court should be based on "equitable adjustment" would be logical.

---

7. Article 4.2 in applicable part states:
   Changes. It is mutually agreed that it is inherent in the nature of highway construction that some changes in the plans and specifications may be necessary during the course of construction to adjust them to field conditions and that it is of the essence of the contract to recognize a normal and expected margin of change within the meaning of the clause 'Changes' and 'Changed Conditions' in the 'General Provisions' of the contract as not requiring or permitting any adjustment of contract prices, provided that any change or changes do not result in (1) an increase or decrease of more than 25 percent in the original contract amount, in the quantity of any major item, or in the length of project, or (2) a substantial change in the character of the work to be performed under a contract pay item or items that materially increases or decreases the cost of its performance.
   Any adjustment in compensation because of a change or changes resulting in one or more of the conditions described in (1) and (2) of the foregoing paragraph, * * * shall be made in accordance with the provisions of article 9.3.

8. Neither side alleges that the issues were affected by any conflict arising from the difference in wording.

It appears that the trial court reached the same conclusion that we have with respect to the relationship between the contract and the specifications contained in FP–57, since it stated in open court at a hearing on appellant's motion for a new trial that:

> [B]y virtue of the specification books and * * * exhibits, I think they had to take into consideration that there was a changed condition *and if they couldn't agree then it had to be on a force account basis.* And from the testimony as the Court found it, that's the way the plaintiff did charge it, *on force account basis.* The findings and conclusions and judgment were submitted by the Court itself. I don't consider that any additions are needed except as I have stated * * *. (Tr. 384) (Emphasis added.)

It is true, as appellees stress, that the trial court in its findings of the amounts due appellees for their claims refers to the amounts variously as: "reasonable and necessary expenses", "equitable adjustment and reasonable compensation", "the reasonable and necessary increased cost" constituting "a reasonable and equitable adjustment of contract compensation and as "the reasonable and necessary increase in the cost * * and an equitable adjustment for the changed conditions". The court also found that the cost analyses prepared by the Contracting Officer and submitted at the trial "do not fairly and accurately reflect the increased cost to the contractor nor equitably adjust the contractor's compensation". It found that the cost analyses prepared and submitted by appellees did "fairly and properly reflect the equitable adjustments" required by the contract provisions.

We are able to reconcile this language of the trial court regarding the amounts due the appellees with its later statement that "if they couldn't agree * * * then [the settlement for work required by the changed conditions] had to be on a force account basis" by assuming that the trial court was under the mistaken belief that appellees'

costs analyses, which it adopted, actually had been calculated by force account methods and that a force account settlement was the equivalent of an equitable adjustment. It had been represented during the trial that under some circumstances an "equitable adjustment" was the equivalent of a "force account" settlement.

■ We find the authorities cited by appellees not to be applicable to the facts before us. For example, in Kaiser Industries Corp. v. United States,[9] the plaintiff's contract with the Army Corps of Engineers was for the repair of stone revetments along the shoreline of McNary Dam. Since it was not a highway construction contract with partial federal funding, no standard federal highway construction specifications such as FP–57 were superimposed upon the terms of Article 4 of the contract there involved. In any event, the facts in *Kaiser* are dissimilar in that the relocation of the quarry to Oregon from Washington was so substantial a change as to require the calculation of increased costs on the basis of actual costs. It does not appear that any one of the changed conditions in the case before us was so substantial that equitable compensation could not be accomplished under force account methods. In fact, the question of whether changed conditions as defined in Article 9.3 actually existed, was arguable and was vigorously contested below. Since the State has accepted the trial court's findings in this respect this court will not look behind the findings. We find Tobin Quarries, Inc. v. United States,[10] and F. H. McGraw & Co. v. New England Foundation Co.,[11] to be inapplicable for substantially the reasons stated above.

■ We find no substantiation for appellees' argument that the 15 per cent which Article 9.5 of FP–57 permits to be added to the direct cost of labor and materials is for the purpose of defraying the cost of "supervision, transportation, camp, utilities, supplies, lubrication, guards, and barricades" and that an additional 15 per cent can permissibly be added for the contractor's profit.

---

9. 340 F.2d 322, 169 Ct.Cl. 310 (1965).

10. 84 F.Supp. 1021, 114 Ct.Cl. 286 (1949).

11. 210 F.2d 62 (1st Cir. 1954).

Article 9.5(d) specifically states that "no allowance shall be made for general superintendence" and Article 9.5(a) allows for the charging of a foreman's wages.[12] The cost of a suitable transportation system would undoubtedly have been budgeted for in the Contractor's original bid and compensation for increased transportation costs is allowable under Article 9.5(c) as equipment rental. The preceding comment is also applicable to camps and utilities. The cost of additional supplies would presumably be recoverable under Article 9.5(b) as materials. Increased lubrication costs are allowed under 9.5(c) and increased guards' wages as labor under 9.5(a).

In view of our interpretation that FP–57 supplies the contract with specificity beyond the terms of Clause 4 and requires that compensation for changed conditions be calculated on a force account basis, we must now examine the three contested awards to determine whether force account methods were in fact employed.

Article 9.5 in pertinent part states:

Force-Account Work. All work performed or labor and materials furnished on a force-account basis shall be paid for on the following basis:

(a) *Labor.*—For all labor and for foremen in direct charge of the specific operations the contractor shall be paid:

* * * [Subdivisions 1, 2, 3, and 4 include the actual cost of wages, workmen's compensation insurance, social security taxes, and amounts paid on employment contracts]

(5) An amount equal to 15 percent of the actual costs of wages and the other costs listed above.

(b) *Materials.*—For all materials accepted by the engineer and used in the work, the contractor shall be paid the actual cost of such material, including transportation charges, to which cost shall be added a sum equal to 15 percent thereof.

(c) *Tools and Equipment.*—For any machine power tools and special or heavy equipment used, the contractor shall be paid reasonable rentals at rates which shall include compensation for fuel and lubricants, which shall be agreed upon in writing before starting work, except when equipment rental rates to be paid are stated in the special provisions. No percentage shall be added to equipment rental rates and no allowance shall be made for the use of small tools and manual equipment.

(d) *Supervision.*—No allowance shall be made for general superintendence.

The first claim is for furnishing and driving concrete piling to a bearing of 40 tons. Because of unanticipated conditions it was not possible to obtain the required bearing at a depth of approximately 40 feet as was expected. Instead, it became necessary to drive the piles to a depth of as much as 70 feet. This required additional pipe pile forms, end plates, the splicing of forms, additional welding, and additional concrete. Appellees itemized the additional labor and materials required because of the unforeseen subsurface condition and added to these amounts 15 per cent for "overhead and profit" pursuant to Article 9.5 of FP–57. The "Cost Summary Total" then appeared as follows:

| | |
|---|---|
| Force Acc't. from April 26 to May 3, 1962 | $4,874.39 |
| Force Acc't. cost from May 9 to May 16, 1962 | 4,151.02 |
| Unusable 12″ I D pipe pile | 623.14 |
| Extra cost for acquiring 13″ I D pipe pile | 1,240.03 |
| Extra cost for concrete for filling 13″ I D pipe pile | 755.10 |
| Extra cost for ¾″ x 13¾″ end enclosures | 253.05 |
| Extra cost for waste in ¾″ x 12″ end enclosures | 144.00 |
| Total Extra Cost Involved in Driving Extra Footage of Pile | $12,040.73 |

With 15% * * * [primary contractor's] override $13,846.84

———◆———

12. See also Clause 10 of the contract.

Appellant argues that the 15 per cent "overhead and profit" item added to the cost of additional labor and materials is the only such item permitted under force account methods and that it was error for the trial court to allow the additional item of $1,796.11 representing a 15 per cent override on the total cost of additional labor and materials.

■ We are of the opinion that appellant is correct and we so hold. The only items of additional cost allowed in force account accounting are those named in Article 9.5. Since this article makes no allowance for a 15 per cent markup on the additional cost, it was error to include this item in the amount of the judgment.

Next to be considered is the contract pay item for the excavation and backfilling of a dyke. The trial court found that a changed condition existed because appellees were required to excavate the rip-rap trench to an average depth of 11.7' instead of 8.1' as was indicated in the plans.

The trial court adopted appellees' figures which established the sum of $6,653.69 as an "equitable adjustment". Appellees' Ex. 9 explains this figure by first establishing the total direct cost as being:

| Labor | $5,518.00 |
| Equipment | 8,112.00 |
| Total | $13,630.00 |

Although appellees represented that the total amount of the excavation was 30,402 cubic yards, they established the payable quantity (apparently that part of the total excavation used for backfill) as being 21,736 cubic yards. $13,630.00 ÷ 21,736= $0.627, the actual cost of handling per cubic yard. From the actual cost of $0.627 appellees deducted $0.388, the estimated

cost of handling per cubic yard calculated from the plans, and arrived at the figure of $0.239 as being the increased cost per cubic yard of handling 21,736 cubic yards. By multiplying the increased cost per cubic yard ($0.239) by the relevant number of cubic yards (21,736) the appellees arrived at a base figure of $5,194.00. To this figure appellee added 15 per cent overhead, 10 per cent profit and 1.25 per cent for bond and taxes to obtain the total of $6,653.69 and claimed this amount to be the balance due.

■ Whatever may be said for the fairness of the above method of calculating the equitable adjustment, it is apparent that force account methods were not employed and that the amount claimed and allowed by the trial court is greater than would have resulted if force account had been used. For these reasons the court's finding and allowance must be set aside.

The remaining item questioned by appellant is that for the erection of a dyke embankment which was to be built with material obtained by the excavation of a change in the channel of a glacial stream.

Appellees claimed and were awarded $34,227.67 as an equitable adjustment for this item. Again, it is obvious from an examination of appellees' Exhibit 9 that the increased costs were not calculated by force account methods and that the sum allowed is greater than would have been established using force account accounting.

The judgment, findings, and conclusions are ordered set aside. New findings, conclusions and judgment consistent with the views expressed in this opinion shall be entered.