**PAUL HARDEMAN, INC.**

v.

**The UNITED STATES.**

No. 273-67.

United States Court of Claims.
Feb. 14, 1969.

Harold F. Blasky, New York City, for plaintiff, Max E. Greenberg, New York City, atty. of record, Max E. Greenberg, Trayman, Harris, Cantor, Reiss & Blasky, New York City, of counsel.

John C. Ranney, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge, delivered the opinion of the court:

This case comes before the court on the motion of plaintiff and on cross-motion of defendant for summary judgment, in review under the Wunderlich Act (41 U.S.C. §§ 321, 322 (1964)) of a decision of the Corps of Engineers Board of Contract Appeals. Both parties rely upon the administrative record and the pleadings filed in this court, and there is no dispute over the material facts. Both plaintiff and defendant agreed during oral argument that a decision for plaintiff in this court would necessitate returning the case to the board for determinations on the issue of quantum.[1]

---

I. The original board decision was on the issue of entitlement to costs alone. Paul Hardeman, Inc., 66–1 BCA ¶ 5544 (ENG BCA 1966). Subsequent to that decision, plaintiff moved for reconsideration, requesting as part of its motion a trial on the amount of the adjustment to which plaintiff would be entitled, were this court to reverse the board's decision. The board ruled that the issue of quantum was not ripe for decision, and it refused to consider the matter at that time. Paul Hardeman, Inc., No. 2710, p. 3 (ENG BCA, July 29, 1966) (on motion for reconsideration).

For the reasons stated herein, we grant plaintiff's motion for summary judgment, deny the defendant's, and return the case to the board.

On April 12, 1962, plaintiff corporation contracted with the United States Army Corps of Engineers for the furnishing of plant, labor, equipment, and material to construct a dam and powerhouse at the Green Peter Reservoir site on the Middle Santiam River, Linn County, Oregon. Although the contractor was allowed to select the equipment for and method of handling and placing concrete, the contractor's choices were subject, under the contract, to the approval of the contracting officer.[2]

The method of concrete conveyance and placement selected by plaintiff and accepted and approved by defendant required the construction and utilization of a trestle extending from embankment to embankment across the cavity wherein the dam was to be constructed. The plan contemplated the simultaneous operation of two whirley cranes on a roadway established upon the trestle. The cranes were supplied with concrete from a batch plant near the left embankment by means of a dinky railroad operating on tracks laid on the trestle roadway. The dam was constructed directly beneath the trestle.

The construction of the trestle was to begin from each embankment and proceed toward the center of the site. During excavation of the area near the right abutment, however, a subsurface condition was discovered which necessitated the unanticipated removal of approximately 118,000 cubic yards of additional material. The contracting officer found the subsurface fault to be a changed condition within the meaning of Article 4 of the General Provisions of the contract,[3] and the contractor has been fully compensated for the additional excavation.

Because of the changed condition, the trestle could not be completed on schedule, and a gap was left in the trestle until the additional excavation was performed. The gap was located near the right bank, and consequently the mobility of the whirley crane located on that embankment was severely restricted from July 9, 1964, to September 21, 1964. That crane could not be used at all for the placement of concrete during that period, although some concrete was poured in the interim by means of the left-bank crane.

■ The question for decision here is a narrow one. Plaintiff claims that from July 9, 1964, to September 21, 1964, the costs to it of concrete placement were greater by virtue of using only one

---

2. Technical Provision 4–10 read, in part, as follows:

"* * * Methods and equipment for handling and depositing the concrete in the form shall be subject to the approval of the Contracting Officer. * * *"

To the same effect, see Technical Provision 4–11:

"* * * All concrete placing equipment and methods shall be subject to approval. * * *"

3. Article 4 reads as follows:

"4. CHANGED CONDITIONS

"The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting Officer in writing of: (a) subsurface or latent physical conditions at the site differing materially from those indicated in this contract, or (b) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract. The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do so materially differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly. Any claim of the Contractor for adjustment hereunder shall not be allowed unless he has given notice as above required; or unless the Contracting Officer grants a further period of time before the date of final payment under the contract. If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Clause 6 of these General Provisions."

whirley crane than they would have been if two cranes could have been used, as planned.[4] Plaintiff asserts that these costs were the direct result of the changed condition and that it is entitled to an equitable adjustment therefor. Plaintiff admits that it has been fully compensated for all other work and costs to it occasioned by the changed condition.

The board denied plaintiff's claim on the grounds (1) that the modifications of plaintiff's operation necessitated by the changed condition were consequential to the delay incident thereto, and pay-

ment for any such increased costs is barred by the "Rice doctrine" (United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942)); and (2) that plaintiff placed substantially less concrete than projected with the left-bank whirley crane from July to September, indicating that plaintiff's increased costs were attributable to some other cause than the non-use of two whirley cranes, and accordingly the costs were not a direct result of the changed condition.[5]

Defendant, in reliance upon the first ground of the board's decision,[6] contends that, whether or not the dam-

---

4. We accept this statement as true for purposes of deciding the motions before us. Plaintiff, however, has not specified either here or before the board the exact nature of the costs it seeks. It is difficult to see how the operation of one crane can be more expensive than the operation of two of the exact same type, and because of this, defendant is concerned that plaintiff may in fact be seeking delay damages under another name. Since we are without any factual basis, we intimate no opinion on this point. The board, however, is not precluded by our decision from requiring the plaintiff to specify precisely the costs it incurred nor from deciding whatever issues— whether bearing on entitlement or quantum—the fully developed facts may present.

The Board of Contract Appeals concluded that plaintiff acted reasonably in using only one whirley crane for concrete placement during the interim, and defendant does not challenge that finding here. Defendant had originally argued that plaintiff could have disassembled the right-bank whirley and moved it to the other side. From the evidence before it, the board found, however, that the length of the usable trestle roadway at the time was 300 feet. It also determined that the optimum control radius of each crane was 170 feet. It therefore concluded that two cranes could not safely and economically operate at the same time on the then constructed portion of trestle. This finding is supported by substantial evidence in the record, and we approve it.

5. Paul Hardeman, Inc., 66–1– BCA ¶ 5544, at 25,932, 25,934 (ENG BCA 1966).

6. No extended discussion of the second ground for the board's decision is necessary. As defendant's attorney admitted

during oral argument, this conclusion reached by the board is not supported by substantial evidence.

Because the parties had viewed this dispute from the beginning as a question of law, a conference-type hearing was held. No witnesses were called. The record was addressed solely to the issue of entitlement, and there is no direct evidence on the nature of the damages incurred by plaintiff.

The discussion of causation in the board's opinion opens with the following statement:

"Although the Contracting Officer made no findings with respect to the unchanged work, other than that any increased cost would be consequential damages, and the parties presented no affirmative case on the cause of increased cost of the unchanged work, from the record as supplemented by the parties the Board arrives at the following analysis."

The board, relying on figures showing that the left-bank whirley crane had not approached its projected placement capability for the period in question, then concluded that the cause of plaintiff's increased costs was something other than the unavailability of the other crane. These figures were considered together with some sketches showing, in general terms, the operation of a whirley crane. No other matter was considered.

There is plainly no evidence in the record sufficient to warrant the conclusion that the limited placement of concrete by the left-bank crane was caused by something other than the non-use of the other crane. "*Substantial* evidence is evidence which could convince an unprejudiced mind of the truth of the facts to which the evidence is directed." Koppers Co. v. United States, 405 F.2d 554, 558, 186 Ct.Cl. ——, —— (Dec. 1968).

ages plaintiff claims are denominated "delay damages," the increased costs incurred by plaintiff were suffered in the performance of work which was required under the contract, the amount and scope of which was unchanged by the changed condition. The recovery of such "consequential" costs, defendant argues, is barred by the "Rice doctrine."

The first question to be decided is whether the damages allegedly incurred by plaintiff were "delay damages." We are not faced with a situation wherein plaintiff alleges that the Government was responsible for a delay which gave rise to the damages claimed.[7] Instead, plaintiff argues that the disputed costs were not at all a result of delay.

It is true that, had plaintiff not been without the full use of one of its cranes during the period in question, the costs sought would not have been incurred. But the coincidence of the hiatus and the additional expense does not necessarily imply a causal link between them.

The term "delay" implies a stopping or hindrance for some period; "delay damages" are obviously those which flow from that increment in time. In this context, standby equipment expense, additional overhead, increased labor costs —typical delay damage items—are not incurred unless there is a prolongation of performance beyond the anticipated date of completion.[8]

In contrast, the costs sought by plaintiff would have been incurred even had the contract been performed as soon as physically possible. An interruption in one phase of the work under a contract does not always result in an increase in the time necessary for total performance. In such a case, the absence of any delay would obviously preclude recovery therefor. Had there in fact been no delay in the completion of the instant contract, plaintiff's restricted pouring operations would still have caused the increased costs alleged. Plaintiff's damages accordingly could not have been the result of any delay in performance, and the board erred in concluding otherwise.

There remains the further question concerning the relation of the "Rice doctrine" to increased costs in the performance of work which is required by the contract, but which is not changed in scope by the changed condition. It is our opinion that the Supreme Court cases relied upon by defendant are not applicable to the instant situation.

The four decisions which are the basis of the "Rice doctrine"[9] were concerned, so far as they relate to this case, only with whether delay damages were recoverable. As stated by Mr. Justice Black for the Court,

> * * * The question on which all these cases turn is, did the Government obligate itself to pay damages to a contractor solely because of delay in making the work available?
> * * *

---

The evidence relied upon by the board falls far short of this standard, and the conclusion reached on the causation issue is in error as a matter of law.

7. Where unreasonable delay is caused by the Government, the "Rice doctrine" does not preclude the recovery of damages flowing from that portion of the delay which is unreasonable. *E. g.*, Gardner Displays Co. v. United States, 346 F.2d 585, 588–589, 171 Ct.Cl. 497, 503–504 (1965); Laburnum Constr. Corp. v. United States, 325 F.2d 451, 163 Ct.Cl. 339 (1963).

8. *See also* United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944), where, even though the contract was performed on time, the contractor sought damages on the theory that he could have completed performance substantially earlier had he not been delayed.

9. United States v. Howard P. Foley Co., 329 U.S. 64, 63 S.Ct. 120 (1946); United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942); H. E. Crook Co. v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438 (1926); Chouteau v. United States, 95 U.S. 61, 24 L.Ed. 371 (1877).

United States v. Howard P. Foley Co., 329 U.S. 64, 69, 67 S.Ct. 154, 91 L.Ed. 44 (1946). It is in this context that this court has applied the "Rice doctrine." *See, e. g.,* Jefferson Constr. Co. v. United States, 392 F.2d 1006, 1012, 1015, 183 Ct.Cl. 720, 728–729, 735, cert. denied, 393 U.S. 842, 89 S.Ct. 122, 21 L.Ed.2d 113 (1968). The Government, however, points to the following language from Chouteau v. United States, 95 U.S. 61, 68, 24 L.Ed. 371 (1877), cited by the Court in United States v. Rice, 317 U.S. 61, 64–65, 63 S.Ct. 120, 87 L.Ed. 53 (1942):

> * * * For the reasonable cost and expenses of the changes made in the construction, payment was to be made; but for any increase in the cost of the work not changed, no provision was made. * * *

As an abstract statement of the contractual situations in the *Rice* and *Chouteau* cases, the rule quoted is undoubtedly correct as it applied to the delay damage questions before the Court in those instances. But nowhere in any of the opinions of the Court can we find any indication that this language was intended to establish a broad rule applicable even outside the delay damage context.

 Moreover, as the above-quoted statements indicate, the Court was at all times primarily concerned with what the parties had contractually contemplated. In the instant case, it is quite clear that the parties had agreed that an equitable adjustment would be made for just such damages as plaintiff allegedly suffered. Article 4 of the contract provided that "an increase * * * in the cost * * * of performance" brought about by a changed condition would be remediable under the disputes procedure. As that clause demonstrates, the parties had contemplated that a latent subsurface condition might be discovered, and it was clearly foreseeable that the trestle—and, therefore, plaintiff's method of operation —could be affected as a consequence. In fact, defendant has tacitly recognized this to a certain extent by compensating plaintiff for the modifications in its trestle towers necessitated by the changed condition.

 Construing language identical to that contained in Article 4 of the instant contract, this court (relying upon Tobin Quarries, Inc. v. United States, 84 F.Supp. 1021, 114 Ct.Cl. 286 (1949)) has stated that the equitable adjustment allowable as a result of a changed condition is "the difference between what it cost it [the contractor] to do the work and what it would have cost it if the unforeseen conditions had not been encountered." Kaiser Indus. Corp. v. United States, 340 F.2d 322, 337, 169 Ct.Cl. 310, 336 (1965). Under this test, it is clear that defendant contractually assumed the risk that it might have to pay just such costs as plaintiff claims. Put in other words, since the parties contractually agreed that non-delay damages which increased the cost of performance and which flowed directly from the changed condition would be compensable, the Government in this case contracted to pay for the increased cost of performance of unchanged work attributable to the changed condition. The board erred as a matter of law in finding that plaintiff was not entitled to an equitable adjustment for the costs in question.

Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied. The case is returned to the Corps of Engineers Board of Contract Appeals for a period not in excess of 90 days for a determination of the amount of the equitable adjustment to which plaintiff is entitled in accordance with this opinion. Plaintiff shall comply with Rule 100 and the General Order of April 1, 1968.

DAVIS, Judge (concurring):

I join in the court's opinion because I understand it to lay down and apply the same standard as has been used by the Boards of Contract Appeals in cases such as Ivey Bros. Construction Co., Inc., Eng. BCA No. 1764 (1960) (unreported deci-

sion); Gust K. Newberg Construction Co., Eng. BCA No. 2754, 67–2 BCA ¶ 6490, at 30.116–18; I. K. Construction Enterprises, Inc., ASBCA No. 10987, 67–1 BCA ¶ 6271, at 29,027; Eastridge Excavating Contractors, Inc., Eng. BCA No. 2683, 67–1 BCA ¶ 6379, at 29,534–35; A. L. Harding, Inc., DCAB No. PR–44, 65–2 BCA ¶ 5261, at 24,777, aff'd on reconsideration, 66–1 BCA ¶ 5463, at 25,590–91, and Power City Construction & Equipment, Inc., IBCA No. 490–4–65, 68–2 BCA ¶ 7126, at 33,024–26. That rule permits an equitable adjustment to cover increased costs which were the direct and necessary result of the change or changed conditions, where the condition or the change directly leads to disruption, extra work, or new procedures. The record makes it very clear that such is the situation here and that the Engineers Board could not properly find the plaintiff's added costs to be merely "consequential".