"This case is again before the court on review of Trial Judge Spector’s opinion of March 31, 1977, which would affirm a decision of the General Services Administration Board of Contract Appeals (GSBCA or Board) insofar as it determined the quantum due plaintiff on its acceleration claim, and would hold that plaintiff is entitled to a trial on its breach of contract claims. Our difference with him is more theoretical than practical and probably will not affect the result.
"The events giving rise to this litigation occurred in 1961 and 1962, and the delays in final decision have become celebrated as among the horribles of Wunderlich Act procedure. Plaintiff was awarded a contract to construct the Federal Exhibit Buildings at the Seattle World Fair. Time was of the essence, for the buildings had to be completed for the opening of the Fair in April 1962. Thus, plaintiff was forced to accelerate performance to counteract the delaying effect of disruptions, of which there were many, in the work schedule. A good many of the delays were excusable, and most are attributed by plaintiff to indiscriminate change orders, hold orders, and stop work orders allegedly issued by defendant. The contracting officer ruled unfavorably on plaintiffs claims in 1962 and 1963. Plaintiff next brought the matter to the GSBCA, where it was pendent for seven years. To preserve its breach of contract claims, plaintiff filed a protective petition in this court in 1968. We suspended action on the petition, awaiting a decision by the GSBCA. This decision was forthcoming in June of 1969. The case was then appealed to this court and referred to the Trial Division for appropriate action pursuant to Rule 166.
"On June 9, 1972, Trial Judge Spector issued his first opinion. Following this report, the court issued an order, *400 dated March 19, 1973, stating that 'this case is and should be treated as governed by the Wunderlich Act, and not as a suit for breach of contract.’ We did not say 'a portion of this case.’ The trial judge was instructed to issue another report under the standards of the Wunderlich Act. He did so on August 2, 1973 [204 Ct.Cl. 801], Another order was issued by the court on March 1, 1974, adopting portions of the trial judge’s recommended decision, and remanding two claims to the Board: (1) the costs of acceleration, and (2) a minor claim pertaining to a handrail. Apparently the latter claim has been settled for $1,016.20. The Board recommended that plaintiff be compensated in the amount of $62,500 for the costs incurred in accelerating performance. The case was again referred to Trial Judge Spector, who reported favorably on the GSBCA decision, and recommended a trial on the breach of contract claims.
"In view of our express statement that this case is to be governed by the Wunderlich Act, and not treated as a breach case, we have some difficulty in understanding the approach taken by the Board, and apparently the defendant, upon remand. It is possible that some confusion may have been created by the 1974 order, which remanded to the Board specifically for the purposes of examining the acceleration and handrail claims. We intended, of course, that the Board also take into account the earlier order, however, there is no evidence that this order was ever brought to the Board’s attention. In any event, the Board noted the absence of a suspension of work clause and failed to consider, in computing the award due plaintiff, any portion of its claims other than those costs which the Board deemed attributable 'solely’ to the efforts in accelerating performance. The Board stated that '[t]he concept of acceleration does not embrace delays, stand-by or efficiency losses, rather it is the effort required to overcome these causes which have put the work behind schedule.’ After noting that much of plaintiffs proof was directed to showing that the government was responsible for delays and disruptions entitling plaintiff to time extensions, the Board proceeded to make a very limited award for acceleration costs. It is clear that plaintiff is entitled to recover more than the amount arrived at by the Board. It admitted the costs were inseparable except on a guesswork basis, which it palliated as a 'jury verdict.’
"We do not agree with the Board and Trial Judge Spector that there should be a separate trial of claims *401 sounding in breach of contract. In ordering that this case be decided under the standards of the Wunderlich Act, the court contemplated that plaintiff would be fully recompensed by an equitable adjustment which would include all time-related costs. Although the traditional 'suspension of work’ clause is absent from the written contract which otherwise contains most of the standard federal procurement clauses, this does not operate to preclude an equitable adjustment reflecting all the claims relating to government caused expense. The Board attempted a strict delineation of the extra costs which could be ascribed to acceleration, excluding costs it attributed instead to delays and disruptions caused by defendant, according to an arbitrary formula.
"This amounts to an excessively narrow construction of the concept of an equitable adjustment. The extra expenses incurred here are not readily susceptible of separation into individual components representing acceleration, delay and disruption. The concept of an equitable adjustment as awarded under the changes clause is flexible enough to provide full monetary relief to this plaintiff. Equitable adjustments are intended to serve as 'corrective measures * * * [which] keep a contractor whole when the government modifies a contract.’ Bruce Construction Corp. v. United States, 163 Ct. Cl. 97, 100, 324 F.2d 516, 518 (1963); see Pacific Architects & Engineers, Inc. v. United States, 203 Ct. Cl. 499, 508, 491 F.2d 734, 739 (1974). Although it is often possible to analyze a claim under more than one theory of recovery, ultimately the proper focus is on the amount of money which should be due a contractor when the transaction is completed. General Builders Supply Co. v. United States, 187 Ct. Cl. 477, 483, 409 F.2d 246, 250 (1969).
"The approach advocated by defendant and the GSBCA is questionable in light of an earlier decision of this court. In Paul Hardeman, Inc. v. United States, 186 Ct. Cl. 743, 406 F.2d 1357 (1969), the government argued that the extra costs incurred by the contractor, who had encountered a changed condition, were attributable instead to delay, and were not compensable under the changed condition article. The court said, however, that delay damage items (for which equitable adjustment is unavailable absent a suspension of work clause) are not incurred unless there is a 'prolongation of performance beyond the anticipated date *402 of completion.’ 186 Ct. Cl. at 749, 406 F.2d at 1361. The court went on to hold that in the absence of an actual delay the extra costs of performance were attributable to the changed condition and the contractor should be awarded an equitable adjustment under the changed condition article.
"In Merritt-Chapman & Scott Corp. v. United States, 192 Ct. Cl. 848, 851, 429 F.2d 431, 432 (1970), the court said:
Wholly apart from the Suspension of Work clause, it is established that under the Changes and Changed Conditions articles the equitable adjustment can include increased costs which were the direct and necessary result of the change or the changed condition, where that condition or change directly leads to disruption, extra work, or new procedures. See Paul Hardeman, Inc. v. United States, 186 Ct. Ct. 743, 406 F.2d 1357 (1969); Ivey Bros. Constr. Co., Eng. BCA No. 1764 (1960). At least a portion of the claimed cost increase in this case — it is unnecessary to determine how large a portion — falls within this class and would be recoverable even if a Suspension of Work clause had been omitted from the contract.
"The instant case is analogous, although the relevant theory of recovery is acceleration, a change, rather than a changed condition. As a result of acceleration, it appears that there was only nominal delay in the completion of the contract, but the plaintiff would have been entitled to time extensions for excusable delays. It also appears that the actual delay in the completion of the contract was less than a month — March 25 to April 16, 1962. Defendant says this delay is fully accounted for by a month of subcontractor delays for which it was not responsible. To the extent this is correct, no part of plaintiffs claim for delay is for 'delay damages’ caused by defendant. Instead, the immutability of the April 1962 deadline forced the acceleration of performance under the contract. Under the reasoning of Har-deman, delay damages which are not compensable under the contract, do not exist when 'no prolongation of performance’ occurs. Also under the Hardeman theory, the absence of a suspension of work clause does not preclude plaintiff from recovering the additional costs in excess of the acceleration costs allowed by the Board, that are the direct and necessary result of constructive changes which should have been but were not covered by change orders.
"At this point it might be noted that one of the defenses raised by defendant is that plaintiff is precluded, under the *403 terms of a release it drafted and signed, from pursuing a breach suit. The release contained the following language:
The undersigned contractor * * * hereby releases the United States from any and all claims arising under or by virtue of said contract or any modification of change thereof except as follows:
Sfc ijS ^5 *
(1) Claim for remission of liquidated damages in the amount of $34,000 and (2) claim for acceleration costs in the amount of $324,956.68; or (3) claim for breach of contract alternative to items 1 and 2 in the amount of $531,000.
Defendant interprets the release to present plaintiff with an election of remedies: pursuance either of a suit before the GSBCA or a suit for breach but not both. Plaintiff has chosen to litigate its claim in an administrative forum, therefore, defendant reasons, it cannot turn around now and attempt to recover in a breach suit in this court. Whether or not this is the case, it is sufficient here to remark that our approach obviates a judicial construction of this language. Plaintiff will recover fully under the contract, without resort to a breach action.
"Despite our determination that plaintiff is entitled to a full equitable adjustment representing all government caused extra costs in performing this contract, it will not be necessary to again remand this case to the GSBCA for recalculation of damages. Although aware of our order of March 19, 1973, the government failed to litigate this action before the Board as a Wunderlich case on all points, and instead took the position the case must return here. Defendant was given by us an opportunity, had it wished to so avail itself, to litigate all issues before the Board, and elicit a decision on the full amount of damages. Thus, defendant is estopped from now saying that it should be afforded a decision from the GSBCA on this matter. Under these circumstances we believe a remand to our Trial Division for determination of the correct equitable adjustment due plaintiff is appropriate.
"Although we are reasonably certain that an equitable adjustment under the contract will afford plaintiff all the relief to which it is entitled, we do not wish to risk the possibility that this remand order will not enable the trial judge to dispose of all remaining issues in this long-pending case. In the unlikely event that the record may disclose that there is a claim not redressable under the terms of the *404 contract, such claim is also remanded to the trial judge for his determination. See Len Co. and Associates v. United States, 181 Ct. Cl. 29, 385 F.2d 438 (1967).
"In remanding to the Trial Division, we note that an extensive administrative record is available already on the points at issue in this case. Should the trial judge wish, it would be permissible to rely on the evidence adduced before the Board in making the determination directed by this order. See Hardeman-Monier-Hutcherson v. United States, 198 Ct. Cl. 472, 487, 458 F.2d 1364, 1371 (1972); Air-A-Plane Corp. v. United States, 187 Ct. Cl. 269, 281-82, 408 F.2d 1030, 1036-37 (1969). He may, however, allow the parties to bring in additional evidence, in view of the fact that the Board itself limited its review to its conception of the acceleration costs. In case there are any pure breach claims to be adjudicated, the established rules will of course apply. See United States v. Utah Construction & Mining Co., 384 U.S. 394, 418-19 (1966).
"Plaintiffs request for a quantum decision on the Board record is denied to the extent indicated. We do not have jurisdiction to enter a money judgment until we are in a position to adjudge the entire amount due. It is undisputed that plaintiff is entitled to recover at least $62,500 as determined by the Board and $1,016.20 on the handrail claim, which is agreed to, but we are unable to enter judgment in these amounts at this time. Plaintiffs motions for judgment on the record, and its motion for leave to file a supplemental pleading, both filed April 27, 1977, are denied. Defendant’s request for review under Rule 166, and its motion for summary judgment, both filed May 23, 1977, are denied. It is clear that, with inflation and the absence of interest, plaintiff will at best recover but a small fraction of what it was entitled to receive, in real value, in 1962 upon completion of the work. We are wholly unable to defend the system this case exemplifies. But it is what plaintiff is deemed to have agreed to when it accepted award of a government contract. If the law is not changed, future bidders will no doubt take note.
"In view of the above, it is hereby ordered that judgment is rendered on the question of liability for plaintiff, and the case is remanded to the Trial Division for determination of the quantum of recovery under Rule 131(c).”